IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY M. BASSETT, individually and as heir of James M. Bassett, on behalf of herself and all other similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>CREDIT BUREAU SERVICES, INC., and C. J. TIGHE,<br><br>Defendants. | 8:16CV449<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the plaintiff's motion for certification of a class, Filing No. 49. This is a putative class action for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and the Nebraska Consumer Practices Act ("NCPA"), Neb. Rev. Stat. § 59-1601, *et seq.* The plaintiff challenges a collection letter sent to her by defendants.

I.  BACKGROUND

The plaintiff seeks certification of a class defined as:

(i) all persons with addresses in Nebraska;
(ii) to whom Defendants sent a letter in the form of Exhibit A (Filing No. 1-1);
(iii) in an attempt to collect a debt incurred for personal, family or household purposes as shown by Defendants' or the creditors' records;
(iv) allegedly due for a medical obligation.

The time period for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (hereinafter "FDCPA") is one year period prior to the filing of this litigation, *i.e.*, October 3, 2015, through the date of class certification. The time period

for violations of the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1601 *et seq.* is four years prior to the filing of this litigation, *i.e.,* October 3, 2012, through the date of certification.

On October 3, 2016, Plaintiff Kelly Bassett, individually and as the heir of James Bassett, brought an action against the defendants, alleging that the letter at issue is false or misleading because it: (1) identified an appointment but did not identify the location of the appointment; (b) identified a Norfolk address, but also listed a P.O. Box in Fremont; and (c) stated that defendants would proceed with collection efforts if the appointment was not kept. She alleges the letter was confusing.

The defendants are opposed to class certification. They first argue that a class should not be certified because the plaintiff lacks Article III standing to pursue her claims.[1] Next, they argue the plaintiff cannot satisfy Rule 23(b)(2) since the FDCPA does not provide for injunctive relief and injunctive relief is the primary relief that the plaintiff seeks.[2] Finally, they argue that the plaintiff cannot satisfy Rule 23(b)(3) because a particularized review would be required to determine: (1) if the alleged violation was material (e.g., if each member actually reviewed the letter at issue); and (2) whether the debt was commercial or consumer; and (3) whether a class member's claim may be barred by a previously litigated class action.[3]

---

[1] This argument was rejected in the Court's ruling on the defendants' motion to dismiss or for summary judgment. *See* Filing No. 83, Memorandum and Order.

[2] The defendants' argument is unavailing because the plaintiff seeks class certification under Federal Rule of Civil Procedure 23(b)(3), rather than 23(b)(2), which is limited to injunctive relief. Fed. R. Civ. P. 23(b).

[3] A collection letter similar to Exhibit A here was the subject of *Reynolds v. Credit Bureau Servs., Inc.*, No. 8:15-cv-168, 2016 WL 2859604, at *1 (D. Neb. May 16, 2016). Defendants agreed to stop using the challenged letter going forward. *See id.*, No. 8:15-cv-168, Filing No. 19-1, Settlement Agreement at 9-10.

II. FACTS

Some facts are set forth in the court's earlier orders and will be repeated only as necessary to this opinion. *See, e.g.*, Filing No. 11, Memorandum and Order; Filing No. 83, Memorandum and Order. The record shows the defendants sent at least 9,796 of the challenged standard debt collection letters during the class periods defined in this case. Filing No. 51-8, Ex. 4B, Deposition of C.J. Tighe ("Tighe 30(b)(6) Dep.") at 48-52 & Depo. Ex. 22. Over 4,000 of those letters sought collection of an allegedly unpaid medical account. *Id.* at 4. Defendant Tighe owns and runs CBS. *Id.* at 46.

The persons to whom the challenged letter was sent are identified within the records of defendant Credit Bureau Services. *Id.* at 41-42. Credit Bureau Services' records also identify the creditor requesting the letter. *Id.* Various form letters similar to that at issue herein (which is identified within Credit Bureau Services' record system as B-10) are printed from Credit Bureau Services' computer system, which inserts names, addresses and amounts alleged due. *Id.* at 34-35. Credit Bureau Services' computer system documents every consumer who is sent the letter at issue. Filing No. 51-4, Ex. 3A, deposition of C.J. Tighe ("Tighe Dep.") at 59. When Credit Bureau Services sends a letter, it is electronically noted and documented in a consumer's electronic debtor profile. *Id.* at 59-60. Credit Bureau Services' debtor profile and collection notes for the Bassetts shows that Credit Bureau Services sent the collection letter at issue to the them. *Id.* at 51; Filing No. 52-1, Dep. Ex. 19, Collection Notes. The computer inserts the consumer-specific information into the collection letter. Filing No. 51-4, Ex. 3A, Tighe Dep. at 53-54; Filing No. 51-5, Dep. Ex. 5.

CBS routinely identifies the names, addresses, and payment history of the debtors within its computer system and provides reports with that information to clients such as General Radiology. Filing No. 51-7, Ex. 4A, Deposition of Darcy Kreikemeier ("Kreikemeier Dep.") at 50-51. The evidence also shows that the medical debt collection accounts are personal accounts, not business accounts. *Id.* at 43. They are turned over for collection by medical services providers only in the names of individuals. *Id.* at 43-44. The fact that CBS sent a letter similar or identical to the letter challenged here to a consumer is noted in CBS's computer system in connection with the consumer's electronic profile. *See, e.g.*, Filing No. 52-1, Ex. 4B, Dep. Ex. 19, Collection Notes. Credit Bureau Services reports to creditors on a monthly basis. Filing No. 51-7, Kreikemeier Dep. at 50.

Defendant C.J. Tighe, the president of Credit Bureau Services, was personally involved in drafting the letter that Credit Bureau Services sent to the Bassetts and other class members. Filing No. 51-8, Ex. 4B, Tighe 30(b)(6) Dep. at 12-13. Parts of the letter were rewritten in June of 2015 as a result of a prior lawsuit. *Id.* at 12-13. Filing No. 51-8, Ex. 4B, Tighe 30(b)(6) Dep. at 12-13. Defendant Tighe personally rewrote the letter. *Id.* at 12-13. The record shows Mrs. Bassett understands her role as class representative. Filing No. 51-1, Ex. 1, Declaration of Kelly Bassett at 2.

II. LAW

Under the Federal Rules of Civil Procedure, one or more members of a class may sue or be sued as representative parties on behalf of all members if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23.

In assessing whether the numerosity component is satisfied, a number of factors are relevant, including the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual suits. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). "The commonality requirement is satisfied if the claims of the class depend upon a common contention whose truth or falsity will resolve an issue that is central to the validity of each class member's claims." *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Commonality is not required on every question raised in a class action. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir.1995). Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *Id.* (quoting *Paxton*, 688 F.2d at 561). The typicality requirement is met if there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quotation omitted). The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. *Id.* (noting that factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory).

The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986). The adequacy of representation inquiry reflects concerns about

5

whether the class representatives have common interests with the members of the class and whether they and their counsel will competently and vigorously pursue the lawsuit. *Id.*; *Paxton*, 688 F.2d at 562–63.

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must satisfy one of the three subsections of Federal Rule of Civil Procedure 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23.

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. *Bouaphakeo*, 136 S. Ct. at 1045; *see Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to

6

be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Bouaphakeo,* 136 S. Ct. at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted)); *see also McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875–76 (7th Cir. 2015) (stating that "even if issues like causation and damages might require individual hearings for each claimant, a common issue that is central to each class member's claim—like whether the defendant's product is defective in a products liability case, or whether a debt-collection letter was misleading in a Fair Debt Collection Practices Act case—can be certified and resolved in a class-wide proceeding").

Class ascertainability is "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Carrera*, 727 F.3d at 306. The method of determining whether someone is in the class must be "administratively feasible," meaning that "identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Id.* at 307-08. In addition to the Rule 23(a) and (b) requirements, "[a]n order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).

"'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Amgen Inc.,* 568 U.S. at 478. The FDCPA caps statutory damages in a class action at the lesser of $500,000 or one per cent of the debt collector's the net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii); *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 572 (8th Cir. 2015). An individual plaintiff can recover up to $1,000 in statutory damages, plus attorneys' fees and costs. 15 U.S.C. § § 1692(k)(a)(2)(A) and (a)(3). The NCPA allows statutory damages for each class member up to $1,000, with no apparent cap for class actions. Neb. Rev. Stat. § 59–1609. The FDCPA is a consumer-protection statute authorizing private lawsuits and weighty fines to deter wayward collection practices. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017); *Coyne,* 895 F.3d at 1037.

III. DISCUSSION

The court finds that the requirements of Rule 23 have been met and the proposed class should be certified. The proposed classes consist of over 4,000 individuals who can be readily identified in the defendants' records. Given that number, it would be impracticable to try each case separately. Also, the primary legal and factual issues surrounding the defendants' alleged course of conduct is common for all class members. The class members would have grievances similar to those of the named plaintiff and the class members' claims are likely based on the same legal theories. There has been no showing of any conflict of interest between the plaintiff and the class members. It appears that the adequacy of representation requirement has

been met. The plaintiff's common interests with the members of the class ensure that the class will be fairly and adequately protected. Further, the Court is familiar with purported class counsel and finds counsel has considerable experience in class-action litigation and is competent to represent the class.

The Rule 23(b)(3) requirements are likewise satisfied. Common questions predominate over any questions affecting only individual members. Every letter sent contains the same standard template with the same language. The legality of standardized documents is generally appropriate for resolution in a class action because common questions of law or fact predominate. The legal question here is the same for the plaintiff and each class member—whether the debt collection letters like that sent to Bassett to collect on an alleged unpaid medical debt is unfair, deceptive, or misleading under the FDCPA and the NCPA.

The Court finds that certifying the class will achieve economies of time, effort, and expense, and will promote uniformity as to similarly-situated persons, without sacrificing procedural fairness. Because individual recoveries in this type of action are small, a class action is superior to other methods of fairly adjudicating the controversy.

The plaintiff has shown that the information necessary to ascertain the class can be readily obtained from the defendants' computerized records and has shown that it is administratively feasible to identify the class through these records. Defendant Credit Bureau Services is a highly computerized operation. The defendants are capable of ascertaining the class members from within its records with a proper query.

Moreover, the defendants' concerns are addressed in the limitation of the class to persons who were sent a collection letter regarding a debt for medical services, which

would qualify as a debt for personal, family or household purposes. Also, the exclusion of "returned as undeliverable" correspondence will obviate the defendants' concern that the class could include persons who had never received the letters. Further, the plaintiff apparently has no objection to the additional limitation of the class to those persons who are not members of the class certified in the *Reynolds* action. Filing No. 65, Plaintiff's Reply Brief at 17; see *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation."). The representative plaintiff will be directed to provide appropriate notice to class members under Rule 23(c)(2)(B). Accordingly,

IT IS ORDERED that:

1. The plaintiff's motion for class certification (Filing No. 49) is granted.

2. This action is certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following classes:

   A. FDCPA Class:

      (i) all persons with addresses in Nebraska;
      (ii) to whom the defendants sent a letter in the form of Exhibit A (Filing No. 1-1) (identified in the defendants' records as B-10) from October 3, 2015, through this date;
      (iii) in an attempt to collect a debt incurred for personal, family or household purposes as shown by defendants' or the creditors' records;
      (iv) allegedly due for a medical obligation;
      (v) that was not returned as undeliverable;
      (vi) excluding members of the class certified in *Kenneth M. Reynolds v. Credit Bureau Services, Inc. and C.J. Tighe*, No. 8:15-cv-00168.

   B. NCPA Class

10

|      |                                                                                                                                                                                                                 |
| ---- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| (i)  | all persons with addresses in Nebraska;                                                                                                                                                                         |
| (ii) | to whom the defendants sent a letter in the form of Exhibit A (Filing No. 1-1) (identified in the defendants' records as B-10) from October 3, 2012, through this date;                                         |
| (iii)| in an attempt to collect a debt incurred for personal, family or household purposes as shown by defendants' or the creditors' records;                                                                          |
| (iv) | allegedly due for a medical obligation;                                                                                                                                                                         |
| (v)  | that was not returned as undeliverable;                                                                                                                                                                         |
| (vi) | excluding members of the class certified in *Kenneth M. Reynolds v. Credit Bureau Services, Inc. and C.J. Tighe*, No. 8:15-cv-00168.                                                                            |

3. The plaintiff, Kelly M. Bassett, is appointed representative plaintiff.

4. The Horwitz, Horwitz Law Firm and the Car, Reinbrecht Law Firm are appointed class counsel.

5. The parties shall contact Magistrate Judge Susan M. Bazis to set a status conference on further progression of this case. See Filing No. 41.

DATED this 4th day of January 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge