IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY M. BASSETT, individually and as heir of James M. Bassett, on behalf of herself and all other similarly situated;<br><br>    Plaintiff,<br><br>  vs.<br><br>CREDIT BUREAU SERVICES, INC., and C. J. TIGHE,<br><br>    Defendants. | **8:16CV449**<br><br>**MEMORANDUM AND ORDER** |

This issue is before the Court after a jury trial held June 15, 2021 to June 17, 2021. The plaintiffs brought this class action under both the Federal Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692 *et seq* and the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1601 *et seq.* Filing No. 1 at 9. At trial, the Plaintiff's FDCPA claims were submitted to a jury on June 17, 2021. Filing No. 232. The jury returned a verdict in favor of the defendants on all claims. *Id.* The Nebraska Consumer Protection Act's principal thrust is equitable in nature insofar as it seeks to prevent prejudicial conduct, and thus it is a matter tried by the Court. *Hage v. General Services Bureau*, 306 F.Supp.2d 883, 890 (D.Neb. 2003); *State ex rel. Douglas v. Schroeder*, 384 N.W.2d 626, 629-30 (Neb. 1986). This Court has jurisdiction under 28 U.S.C. § 1331.

**FINDINGS OF FACT**

Many of the facts of this case were set out in previous orders and need not be repeated and are incorporated herein by reference. Filing Nos. 20 and 83. On or about March 14, 2016, Defendants C.J. Tighe and Credit Bureau Services, INC. (CBS) sent the

named Plaintiff, Kelly M. Bassett, a debt collection letter known in company records as a

B-10.[1]   Filing No. 1-1.   The defendants sent this form letter to over 9,500 Nebraska

---

[1] The letter is set out below:

PO BOX 318
FREMONT NE 68026                                                    03/14/2016

RETURN SERVICE REQUESTED

                                                    CREDIT BUREAU SERVICES,  INC.
                                                              1-888-859-4260
                                                    Online payments: creditpartners.com/pmt

            B-10
            Ref#: C235658

                                                              To be sure of proper credit
                                                              and to STOP further procedure
                                                              make payment in full to our office

        **URGENT - DATED MATERIAL**

JAMES M BASSETT
[address redacted]
FREMONT NE 68025

                                        Balance Due:    405.85

                            Please return this with your Payment

Dear    JAMES M BASSETT
            KELLY M BASSETT

            We urgently need to speak with you about the accounts listed below. We have
scheduled an appointment for 3:00 pm on 03/21/2016 to discuss your accounts. Please
call 888-859-4260 or visit our Norfolk office at 122 Norfolk Ave for your appointment.

            If you fail to keep this appointment or pay the balance by that date, we shall
proceed with collection efforts.  Should you have any questions or are unable to make
your appointment, please contact us at the number above.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _                        _ _ _ _ _ _ _ _
GENERAL RADIOLOGY PC (A-L)                                    $66.47
GENERAL RADIOLOGY PC (A-L)                                    $69.19
HEARTLAND ORTHOPEDIC #1                                    $114.30
GENERAL RADIOLOGY PC (A-L)                                    $13.18
GENERAL RADIOLOGY PC (A-L)                                    $7.47
GENERAL RADIOLOGY PC (A-L)                                    $24.90
GENERAL RADIOLOGY PC (A-L)                                    $36.43
GENERAL RADIOLOGY PC (A-L)                                    $73.91

                                        TOTAL $405.82

If Payment has been made, Please disregard this notice.

Interest and other charges may accrue daily.

                        SEE REVERSE SIDE FOR IMPORTANT MESSAGE.

residents with allegedly overdue medical debts.  Filing No. 51-8 at 4.  All B-10 letters include the statement, "Interest and other charges may accrue daily."  Filing No. 1-1.  A collection letter strikingly similar to Exhibit A here was the subject of *Reynolds v. Credit Bureau Servs., Inc.*, No. 8:15-cv-168, 2016 WL 2859604, at *1 (D. Neb. May 16, 2016) ("Defendants agree to change the form collection letter that is the subject of this litigation"); *id.*, Filing No. 1-1, Letter.  Defendants agreed to stop using the challenged letter going forward.  *See id.*, No. 8:15-cv-168, Filing No. 19-1, Settlement Agreement at 9-10.

The March 14, 2016 letter sent to the Bassetts alleged several debts owed to General Radiology PC and one to Heartland Orthopedic.  Filing No. 1-1.  Immediately above the addressee's name, the letter states:  "URGENT - DATED MATERIAL."  *Id.*  The letter does not identify the patient's name or the dates of service for the alleged accounts. *Id.*  The letter also sets an appointment and declares, "if you fail to keep this appointment or pay the balance by that date, we shall proceed with collection efforts."  *Id.*

The record shows defendants Credit Bureau Services, Inc. and C.J. Tighe are debt collectors.  Filing No. 51-8, Tighe 30(b)(6) Dep. at 17-19, 46. During the trial, Tighe testified she is the president and sole shareholder of Credit Bureau Services, and she manages and operates the business.  Tighe testified she oversees CBS's collection efforts, drafted the B-10 letter, and establishes all the procedures for the debt collectors. She also testified CBS automatically charges interest on all its accounts unless explicitly prohibited by the client.  She contended debt collectors are permitted to charge interest

---

Filing No. 1-1, complaint, Ex. A at 1.  The reverse side contains the message "Credit Bureau Services – a debt collector – is attempting to collect a debt.  Any information obtained by our office will be used for that purpose."  *Id.* at 2.

at a rate of 12% per year under Neb. Rev. Stat. § 45-104.  She further testified Heartland Orthopedic had a contract allowing for interest, but no evidence was admitted during the trial concerning an interest rate, the method of accrual or any written examples of the contract between the debtor and provider.  During her testimony, Tighe explained every B-10 letter included accrued interest in the amounts alleged due.  However, upon further questioning, she could not distinguish interest accrued from principal, nor match alleged B-10 amounts with original principal amounts identified in CBS's records.  Tighe testified that interest was computed automatically in the computer system, and she would have to access the computer system to distinguish principal from interest on any given account. Further, she was unable to testify as to when CBS begins charging interest.  CBS keeps all interest collected, according to Tighe.

CBS, Tighe admitted, has no written contract with any consumers unless the consumer opts to sign a payment agreement.  Specifically, CBS had no signed agreement with the Bassetts, and Tighe did not know if a written agreement between the Bassetts and General Radiology existed.  Tighe also testified that while CBS's computer system can mimic the underlying contracts by charging the same interest as the creditors, CBS used the statutory interest rate which is a different rate than the one allegedly contracted for by Heartland Orthopedic.

During the trial, Darcy Kreikemeier also testified.  Kreikemeier worked as office manager for General Radiology PC during the relevant time.  Part of her duties during that period was to refer past-due accounts to CBS for collection.  She further testified General Radiology provided names, dates of service, and principal amounts to CBS. Notably, she asserted General Radiology did not charge interest on overdue accounts.

4

General Radiology did not have contracts with the consumers, and consumers did not know when General Radiology was providing services, according to Kreikemeier.

The defendants repeatedly waived the bona fide error defense at trial.[2]

## CONCLUSIONS OF LAW

### I.    Standing

This Court has previously considered the defendants' motion to dismiss and supporting brief wherein the defendants argued the plaintiffs lacked Article III standing because they had not suffered a concrete harm nor established actual damages. Filing No. 71 at 4-5.  The Court held the plaintiffs had standing to sue, partly on the reasoning that plaintiffs alleged a violation of their statutory right not to be the target of misleading debt-collection efforts. Filing No. 83 at 13-14.  Since then, the Supreme Court has further delimited the scope of Article III standing in *TransUnion v. Ramirez*, 141 S.Ct. 2190 (2021).  Since standing is a threshold issue for the Court, the Court will review standing on its own initiative. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("the objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").

### a.  Law

In *TransUnion v. Ramirez* the Supreme Court held a violation of a statutory right without a concrete harm does not support Article III standing for private citizens to sue in federal court. *TransUnion*, 141 S.Ct. at 2205.  Specifically, *TransUnion* addressed the standing of class members in class-action litigation under the Fair Credit Reporting Act.

---

[2] As discussed below, 15 U.S.C § 1692(k) relieves a defendant of liability if their violation of the FDCPA was unintentional or the result of a *bona fide* error.

5

*Id.* at 2200.  The Court distinguished between those class members who had had false information published to third parties and class members who had false information on their credit files that was never disseminated to other parties.  *Id.*  The central point of analysis hinged on whether the alleged concrete harms were akin to harms traditionally understood to create a cause of action in federal court.  *Id.* at 2204-2209 (finding having false information published to a third party was akin to defamation).  Following *Spokeo*, the Supreme Court reiterated that certain harms readily qualify for Article III Standing: "The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, plaintiff has suffered a concrete injury in fact under Article III."  *Id.* at  2204.  Beyond these harms, an alleged harm must have "close historical or common-law analogue."  *Id.*  However, that analogue need not be "an exact duplicate."  *Id.*  Beyond these limiting clarifications, the old rules regarding Article III standing remain.

"The issue of standing involves constitutional limitations on federal court jurisdiction under Article III of the Constitution, which confines the federal courts to adjudicating actual 'cases and controversies.'"  *See Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *Oti Kaga v. South Dakota Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003).  To establish Article III standing, the plaintiff seeking compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted).  For an injury to be particularized, it must affect the plaintiff in a personal and individual way.  *Id.*  Particularization is necessary to establish injury in fact, but it is not sufficient—an injury in fact must also be "concrete."  *Id.*  A "concrete" injury must be "de facto;" that is, it must actually exist.  *Id.* (meaning real, not abstract). "'Concrete' is not, however, necessarily synonymous with 'tangible.'"  *Id.* at 1549 (noting that "though tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").

An alleged violation of the FDCPA (§ 1692e) is sufficient to show an injury-in-fact. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 345 (7th Cir. 2018).  Specifically, false representation of the amount of a debt that overstates what is owed under state law materially violates 15 U.S.C. § 1692(e). *Coyne*, 895 F.3d at 1035, 1038.  A demand to pay an amount of debt "unauthorized . . . or even 'slightly overstated'" under state law is actionable as a false statement or unfair collection attempt.  *Id.*

### b.  Discussion

This Court has reviewed this case in light of *TransUnion* and reiterates the plaintiffs have Article III Standing to sue in federal court.  As discussed below, CBS cannot lawfully charge interest on alleged medical debts under Neb. Rev. Stat. § 45-104 absent a judgment, and therefore, any attempt to collect interest without a judgment falsely overstates what is owed under Nebraska law.  Not only is this attempt to collect unjustified interest a material violation of the FDCPA, but it is a particularized concrete harm with historical and common-law analogies. *Stratton v. Portfolio Recovery Assoc., LLC*, 770

7

F.3d 443, 445 (6th Cir. 2014) (quoting Robin A. Morris, *Consumer Debt and Usury: A New Rationale for Usury*, 15 Pepperdine L.Rev. 151, 151 (1988)).  Further, courts have long held fraudulent misrepresentation and conversion establish standing, thus demonstrating analogous, if not identical, causes of action traditionally acknowledged at common law.  Therefore, the plaintiffs allege a harm, defined by the FDCPA, that meets all three of the *TransUnion* standards.  A § 1692(e) violation demonstrates an imminent threat of monetary harm, has a long historical foundation, and is closely related to similar harms recognized at common law.  Ultimately, the plaintiffs allege a concrete and particularized harm insofar as the B-10 letters demonstrate an imminent threat of monetary harm and are therefore obviously confer Article III standing.  *TransUnion*, 141 S.Ct. at 2204.

### II.    Judgment as a Matter of Law

Under the Federal Rules, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party, and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. Rule 50(a) (1).

#### a.  Law

According to Rule 50, judgment as a matter of law (JMOL) should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a)(1).; *Duban v. Waverly Sales Co.*, 760 F.3d 832, 835 (8th Cir. 2014).  In applying

this standard, the court is to "draw 'all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence.'" *First Union Nat. Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005). "A reasonable inference is one that may be drawn from the evidence without resort to speculation." *Id.* The Eighth Circuit's standard for considering judgment as a matter of law grants the jury verdict substantial deference. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994). "While [the court] [is] compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, [the court] [is] not a rubber stamp convened merely to endorse the conclusions of the jury, but rather [has] a duty to reverse the jury verdict if the evidence," or the law, "cannot support it." *Zeigler v. Fisher-Price, Inc.*, 302 F.Supp.2d 999, 1006 (N.D. Iowa 2004) (quoting *Ocheltree v. Scollon Prod., Inc.*, 308 F.3d 351, 355 (4th Cir. 1996)). "The expressed standard makes clear that action taken under [Rule 50] is a performance of the court's duty to assure enforcement of the controlling law and is not an intrusion on any responsibility for factual determinations conferred on the jury by the Seventh Amendment or any other provision of federal law." *Fed. R. Civ. P. Rule 50* Notes of Advisory Committee on Rules – 1991 Amendment.

Nothing in Rule 50 precludes a court from considering a JMOL on its own initiative. "Rule 50 neither prohibits a court from suggesting that a party move for [JMOL] nor forbids a court from granting [JMOL] sua sponte." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 559 (5th Cir.2001) (abrogated on other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Indeed, the Eighth Circuit has determined there is "no rule which requires a formal motion by one side before a trial court may draw a legal conclusion and direct a verdict." *Peterson v. Peterson*, 400 F.2d 336,

9

343 (8th Cir. 1968). "The court's discretion to enter judgment as a matter of law *sua sponte* supports the principle that a trial court should have "an opportunity, after all [its] rulings have been made and all the evidence has been evaluated, to view the proceedings in a perspective peculiarly available to [the trial court] alone. [The court] is thus afforded 'a last chance to correct [its] own errors without delay, expense, or other hardships of an appeal.'" *Zeigler*, 302 F.Supp.2d 999 at 1007-1008 (quoting *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 216 (1947)). A sua sponte consideration of a JMOL is discretionary since "[a]bsent a proper motion, a district court is not compelled to rule." *Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.,* 54 F.3d 478, 483 (8th Cir.1995).

### b. Discussion

This Court has reviewed the record and grants a judgment as a matter of law on its own initiative. In doing so, the Court defers to the jury on all relevant factual determinations as discussed below. However, in the interests of efficiency and accurate enforcement of controlling law, the Court has determined that it made an error of law that requires remedy and redress.

The two central claims submitted to the jury were alleged violations of §§ 1692(e) and 1692(g) of the FDCPA. Filing No. 227 at 21-25. The jury returned a verdict in favor of CBS and Tighe on both claims. Filing No. 232. Judgment will be entered according to the verdict on the § 1692(g) claim. However, during their deliberations, the jury submitted a question to the Court asking if they were "supposed to determine if it is allowed by law for a 'debt collector' to charge interest or additional fees if the original creditor did not include those fees in the original agreement." Filing No. 230. To which the Court replied:

> The 'debt collector' may charge interest if it is allowed by law. There is no competent evidence that interest collection by a debt collector which is not

included in the original agreement is allowed under Federal or Nebraska law.  The law on the issue of Nebraska interest is unsettled between the State and Federal Courts. No such interest is allowed under Federal law.

As to additional fees, they may be collected by a debt collector if provided in the original agreement or that originate as the result of agreements between the debtor and the debt collector independent of the original debt.

*Id.*  Whether Nebraska allows interest on alleged debts without an underlying agreement is a question of law, and the statutory interpretation of the Nebraska Supreme Court controls. *Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (finding federal courts defer to state court interpretations of state statutes).  This Court has reviewed the controlling case law in Nebraska and determined it erred in instructing the jury that the law was unsettled.  Under Nebraska law, a debt collector may not collect prejudgment interest under § 45-104 without obtaining a judgment.  Therefore the Court must enter judgment as a matter of law on the § 1692(e) claim.

### III.  Neb. Rev. Stat. § 45-104

This Court has long held that § 45-104 does not permit debt collectors to assess interest on medical debts. *Hage,* 306 F.Supp.2d at 888; *Powers v. Credit Mgnt. Serv.,* 8:11CV436 2016 WL 612251, 10 (D. Neb. February 2, 2016).  This Court relied, in part, on a line of Nebraska Supreme Court rulings which subjugated § 45-104 to the additional requirement outlined in Neb. Rev. Stat. § 45-103.02. *Powers*, 2016 WL 612251 at 10. Since that time, the Nebraska Supreme Court has clarified § 45-104 and § 45-103.02 work independently to provide two distinct means of collecting prejudgment interest. *Weyh v. Gottsch*, 929 N.W2d 40, 45 (Neb. 2019).

### a.  Law

Nebraska Revised Statute § 45-104 provides:

> Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

Neb. Rev. Stat. § 45-104 (2021).   The Nebraska Supreme Court states § 45-104 "authorizes the recovery of *prejudgment* interest on four categories of contract-based claims" regardless of whether the amount is liquidated or not.  *Id.* at 63.  *E.g. McGill Restoration, Inc. v. Lion Place Condo. Ass'n*, 959 N.W.2d 251, 280 (Neb. 2021).  More specifically, "Section 45-104 applies to four types of *judgments*."  *Weyh*, 929 N.W.2d at 62; *e.g., AVG Partners*, 948 N.W.2d at 228 (finding § 45-104 allows for *prejudgment* interest); *Country Partners Coop. v. Steenson*, No. A-20-001 2020 WL 6038914, 3* (Neb. Ct. App. October 13, 2020) ("Section 45-104 authorizes *prejudgment* interest in the amount of 12 percent per annum, unless otherwise agreed"); *accord., Lincoln Benefit Life v. Wilson*, 907 F.3d 1068, 1079 (8th Cir. 2018) (quoting § 45-104 after announcing "the applicable statute governing *prejudgment* interest states").

Prejudgment interest is "interest due, pursuant to statute, as interest that accrues prior to the *rendition of a judgment*."  *First Nat'l Bank v. Bolzer*, 377 N.W.2d 533, 537 (Neb. 1985).  When prejudgment interest is sought, the "time from which interest is to be computed shall also be stated" according to the Nebraska rules of pleadings.  *Weyh*, 929 N.W.2d at 56 n. 28.  However, the rules of pleadings do not preclude the collection of prejudgment interest so long as the parties have notice and the opportunity to be heard before the court before judgment.  *AVG Partners*, 948 N.W.2d 212 at 230 ("Specifically

requesting [prejudgment] interest in the complaint is encouraged because it clearly puts the opposing party on notice.  But compliance with § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard *prior to judgment*").  Ultimately, the provisions of § 45-104 do not control if the parties have contracted to alternative terms.  *Id.* (finding the terms of a lease may supersede the terms of § 45-104).

The Nebraska Supreme Court notes that while § 45-104 does not articulate a date on which prejudgment interest stops accruing, the postjudgment interest statute (§ 45-103.01) requires that prejudgment interest stop accruing on the date of judgment.  *Weyh, 929 N.W.2d at 64*.  The court asserted "prejudgment interest under § 45-104 ends, and postjudgment interest begins on the date of entry of judgment."  *Id.*

"When 'the amount due as interest prior to judgment [is] not by reason of statute but, rather, by reason of an agreement of the parties' the prejudgment interest rules do not apply.  In fact, it is improper to refer to such an amount 'as "prejudgment interest" when in fact it is simply the interest contracted for by the parties.'"  1 Neb. Prac., NJI2d Civ. 7(b) (quoting *First Nat'l Bank, 377 N.W.2d at 537-38* and *citing Prudential Ins. Co. v. Greco, 318 N.W.2d 724 (Neb. 1982)*).  Indeed, "prejudgment interest is part of the judgment."  *Valley Cnty. Sch. Dist. 880005 v. Ericson State Bank, 790 N.W.2d 462, 468 (Neb. Ct. App. 2010)*; *see Knox v. Cook, 446 N.W.2d 1, 6 (Neb. 1989)* ("further, as a part of the judgment entered on remand, the district court shall allow prejudgment interest"); *D.K. Meyer Corp. v. Bevco, Inc., 292 N.W.2d 773, 777 (Neb. 1980)* ("the court should have allowed prejudgment interest to Meyer in its judgment.  It is, therefore, necessary that the judgment be modified to include such prejudgment interest").

13

Since the Nebraska Supreme Court interprets § 45-104 as providing for prejudgment interest and defines prejudgment interest as part of the judgment, logic demands that Nebraska law does not permit the collection of prejudgment interest pursuant to § 45-104 absent a judgment.[3] Further, since § 45-104 is limited to just four types of contract-based judgments, to collect interest under § 45-104, debt collectors must have both (1) a claim based on a qualifying underlying contract and (2) a judgment awarding prejudgment interest.

### b. Discussion

Defendants asserted in their opening argument that interest was permitted under Nebraska law. Tighe later testified that CBS was entitled to a rate of 12% interest per year pursuant to § 45-104. Plaintiffs objected to the defendant's argument because the defendants did not provide evidence of a legal entitlement prior to trial, and there were no instructions prepared for the jury on the legal foundation for interest.

Whether CBS has a qualifying contract claim remains uncertain. On a judgment as a matter of law review, this Court does not assess Tighe's credibility and presumes her testimony regarding Heartland Orthopedic's underlying contract is accurate, even in the absence of admitted evidence. However, this Court also accepts Kreikemeier's testimony that General Radiology had neither a contract with the plaintiffs nor a policy charging interest. The Nebraska courts have ruled that documents such as wills and leases are "instruments in writing" as understood in § 45-104, but have declined to determine if an Independent Contractor's Agreement met the statutory standard. *In re Estate of Akerson*, 960 N.W.2d 719, 729 (Neb. 2021) (finding a will is an instrument in

---

[3] It is logically necessary to the point of being tautological to observe that *pre*-judgment interest requires a judgment.

writing); *Ollis v. Ambassador Real Estate Co.*, No. A-20-564 2021 WL 2201680 (Neb. Ct. App. June 1 2021) (declining to decide if an Independent Contractors Agreement was an instrument in writing); *AVG Partners*, 948 N.W.2d at 230 (finding a lease constitutes an instrument in writing).  However, the Nebraska Supreme Court has also determined that claims such as actions on an appeal bond, property damage claims, and recovery of overpaid insurance claims do not meet the statutory requirements of § 45-104.  *AVG Partners*, 948 N.W.2d at 229.  Therefore, it is uncertain if the alleged debts due to General Radiology meet the statutory requirements of § 45-104 for a qualifying claim.

However, both parties agree the defendants demanded payment of interest on the alleged debts due to General Radiology without filing suit or obtaining a judgment thereon. Since Nebraska law does not deem parties entitled to § 45-104 prejudgment interest without first obtaining a judgment, the defendants were not justified in adding 12 percent interest to their unlitigated accounts.  The Nebraska Supreme Court considers it essential that parties who may be liable for statutory prejudgment interest have an opportunity to be heard before a court.  *AVG Partners*, 948 N.W.2d at 230.  By adding and collecting interest without litigating the issue, CBS's standard debt collection procedures deny consumers their rights to be put on notice and be heard in court.

Accordingly, as a matter of law, this Court finds CBS and Tighe were unjustified in adding statutory interest pursuant to § 45-104 to the Bassett's General Radiology accounts without first obtaining a judgment.

## IV.   FDCPA

"The FDCPA was passed 'to eliminate abusive debt collection practices.'"  *Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 981-82 (8th Cir. 2016)* (quoting

15

*Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015).  "It broadly 'prohibits

a debt collector from making a 'false, deceptive or misleading representation or means in

connection with the collection of any debt,' and from using 'unfair or unconscionable

means to collect or attempt to collect any debt.''"  *Id.* (quoting 15 U.S.C. §§ 1692e &

1692f).

### a.  Law

In addition to its general prohibitions, the FDCPA sets forth several specific

examples of prohibited actions.  *Id.*

> For example, § 1692e(2) prohibits any "false representation of . . .  the
> character, amount, or legal status of any debt[.]"  Section 1692e(5) prohibits
> threats "to take any action that cannot legally be taken or that is not intended
> to be taken."   Section 1692f(1) prohibits the "collection of any amount
> (including any interest, fee, charge, or expense incidental to the principal
> obligation) unless such amount is expressly authorized by the agreement
> creating the debt or permitted by law."  And, § 1692g(a) imposes on debt
> collectors a duty to include certain content[4] in an initial communication with
> a debtor (or in a follow-up writing sent within five days).

*Id.* at 981–82.  A materiality standard applies to § 1692e.  *Hill v. Accounts Receivable*

*Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018) (noting that "[a] statement cannot mislead

unless it is material, so a false but non-material statement is not actionable.")  "A false

representation of the amount of a debt that overstates what is owed under state law

materially violates 15 U.S.C. § 1692e(2) [. . .] because an overstatement of the debt's

---

[4] The content required is . . . , § 1692g(a)(1) requires that a debt collector accurately state the "amount of
the debt" within its initial collection letter.  § 1692g(a)(1).  A debt collector must disclose, in an initial written
or oral communication with a debtor, "that the debt collector is attempting to collect a debt and that any
information obtained will be used for that purpose."  15 U.S.C. § 1692e(11).  Section 1692g(a)(3) provides
that debt collector's validation notice contain "a statement that unless the consumer, within thirty days after
receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be
valid by the debt collector."   15 U.S.C. §§ 1692g(a)(3).   Under 15 U.S.C. § 1692g, a debt collector must
send a consumer written notice of a debt within five days after the debt collector's initial communication
with the consumer.  The written notice must contain certain information, including the amount of the debt
and statements about the consumer's rights and responsibilities.  15 U.S.C. § 1692g.

amount necessarily misleads the debtor about the amount he owns." *Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1038 (8th Cir. 2018).

To succeed under the FDCPA, a plaintiff must prove the following elements: (1) plaintiff is a consumer, (2) the payment obligation defendant seeks to recoup was a "debt" as defined by the statute, (3) the defendant is a "debt collector" as defined by the statute, and (4) the defendant violated any of the protections afforded by the FDCPA. *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011). When evaluating whether a communication is false, deceptive, or misleading, courts consider the perspective of an unsophisticated consumer. *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000)). "Th[e] standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id.* at 317–18; *see also Peters*, 277 F.3d at 1055 (noting that the unsophisticated-consumer test prevents liability for bizarre or idiosyncratic interpretations of collection notices. The unsophisticated consumer test is a practical one, and statements that are merely "susceptible of an ingenious misreading" do not violate the FDCPA. *Peters*, 277 F.3d at 1056).

### b. Discussion

The plaintiff argues that the overall letter is false and misleading in several respects:  setting an appointment, stating there will be further collection efforts, setting

17

out two different addresses of the collection company, and failing to state the dates of service or to identify the person who received the alleged services. Filing No. 211 at 6. The jury deemed these allegations insufficiently proven, and this Court will defer to the jury in that regard. However, the plaintiffs also alleged the letter is misleading because the letter demanded payment of unspecified and unauthorized interest and costs. Filing Nos. 15 at 14; 211 at 6. Whether or not interest is permitted under state law is a legal question to be determined by the Court.

As discussed above, Nebraska law does not entitle a party to charge interest under § 45-104 absent a judgment. Consequently, because CBS admits to charging interest pursuant to § 45-104 without pursuing or obtaining a judgment, CBS necessarily misstated the amount legally owed by the Bassetts. Since a false representation of the amount owed is a material violation of 15 U.S.C. §1692(e), this Court finds in favor of the plaintiffs. As a matter of law, the defendants violated 15 U.S.C. § 1692(e), and there was no legally sufficient evidentiary basis for a reasonable jury to find for the defendants on that issue. Fed. R. Civ. P. 50(a)(1).

### c. FDCPA Damages

15 U.S.C. § 1692(k) assigns civil liability on debt collectors who fail to comply with any provision of the FDCPA and entitles successful plaintiffs to collect (1) any actual damages, (2) additional damages not to exceed $1,000 in the case of individuals, (3) additional damages not to exceed one per centum of the defendant's net worth in the case of class actions, and (4) reasonable attorney fees. 15 U.S.C § 1692(k). In determining damages, the Court must consider the frequency and persistence of the violation, the nature of the noncompliance, and the extent the noncompliance was

18

intentional.  *Id.*  A debt collector will not be held liable if they can show that the violation was unintentional or resulted from bona fide error.  *Id.*

The Bassetts and the members of the class do not seek any actual damages.  The defendants repeatedly waived the bona fide error defense before and during trial.  Filing Nos. 36, 38.

Congress intended the FDCPA to curb abusive debt collection practices.  15 U.S.C. § 1692.  Attempting to collect money to which a debt collector is not entitled is one of the most egregious and abusive violations of the FDCPA possible.  That is why the Eighth Circuit has held that even minuscule miscalculations of the amount of the debt constitute material violations of §1692(e).  *Coyne*, 895 F.3d at 1038; *e.g. Duffy,* 215 F.3d at 873 (finding overstating alleged debts by a mere $.65 constituted a material violation of the FDCPA).  CBS and Tighe admit they intentionally charge interest as a regular part of their business under the erroneous belief that Nebraska law entitles them to do so. CBS and Tighe have been challenged on this practice before.  Since an unsophisticated consumer is likely to accept as correct  whatever the debt collectors demand, it is reasonable to assume that CBS and Tighe have successfully collected interest to which they were not entitled from an unknown number of Nebraska residents.

Because the violation was overtly intentional, materially significant, and both frequent and persistent, this Court holds CBS and Tighe liable for the statutory maximum of $1,000 to each named plaintiff.  Further, given the large number of persons adversely affected, this Court holds CBS liable to the class members as a whole for the statutory maximum of $11,000 and C.J. Tighe liable to the members of the class as a whole for the statutory maximum of $39,000.

V.    **NCPA**

    **a. Law**

The NCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59–1602.  The terms "trade" and "commerce" are defined as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Neb. Rev. Stat. § 59–1601(2).  A person injured in violation of the NCPA maintains a private right of action to enjoin further violations and recover his actual damages. Neb. Rev. Stat. § 59–1609; *Nelson*, 605 N.W.2d at 141.  However, to be actionable under the NCPA, the unfair or deceptive act or practice must impact the public interest. *Id.*, 605 N.W.2d at 141.

The Consumer Protection Act expressly exempts certain activities of heavily regulated businesses. Neb. Rev. Stat. § 59–1617(1) ("the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States").  Collection agencies are regulated under the Collection Agency Act, Neb. Rev. Stat. § 45–601 *et seq.*  The Collection Agency Act is regulatory in nature and obviously intended for the correction of abuses and the protection of the public. *State ex rel. Hartman v. Weiss*, 150 N.W.2d 264, 267 (Neb. 1967).  However, particular conduct is not immunized from the operation of the Consumer Protection Act merely because the actor comes within the jurisdiction of some regulatory body; the immunity arises if the conduct itself is also regulated. *Wrede v. Bank*

of Gibbon, 531 N.W.2d 523, 529 (Neb. 1995).  *See also* Hydroflo Corp. v. First Nat'l Bank, 349 N.W.2d 615, 622 (Neb. 1984) (noting the Department of Banking and Finance had general supervision and control over the bank as well as a duty to aid banks in maintaining proper banking standards and efficiency); McCaul v. American Savings Co., 331 N.W.2d 795 (Neb. 1983) (the Consumer Protection Act did not apply where loans in question had been reported to and indirectly approved by the regulator); Kuntzelman v. Avco Fin. Serv. of Neb., Inc., 291 N.W.2d 705 (Neb. 1980) (noting that not only was the licensee regulated by the state under statutory authority, but the very act of making a loan was regulated). While debt collectors are regulated and licensed under the Nebraska Collection Agency Licensing Board, the various tactics and means of collecting debts are not regulated so as to exempt them from the NCPA.  *Hage,* 306 F.Supp.2d at 890; *Jenkins v. General Collection Co.,* 538 F. Supp. 2d 1165, 1176 (D. Neb. 2008).

Nebraska case law does not define "unfair" or "deceptive" as used in the NCPA. *State ex* Rel v. Consumer Choice Foods, 755 N.W.2d 583, 591 (Neb. 2008).  The Nebraska Supreme Court apparently approves of a U.S. District Court interpretation suggesting the plaintiff must prove the practice "either (1) fell into some common-law, statutory, or other established concept of unfairness or (2) was immoral, unethical, oppressive, or unscrupulous." Id. (citing RAAD v. Wal-Mart Stores Inc., 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998).  However, the U.S. District Court noted, "what is an 'unfair [or deceptive] trade practice' is 'largely left to the courts to decide on a case-by-case basis." RAAD, 13 F. Supp. 2d at 1014 n.6.

The Nebraska Supreme Court "find[s] no limitation on who may sue for violations of §§ 59-1602, 1606 except that such violations must directly or indirectly effect the people

of Nebraska." *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004) (finding that disallowing indirect customers to sue would "essentially remove the word 'consumer' from the Consumer Protection Act).   The Nebraska Supreme Court says the NCPA aims to "achieve and maintain consistency in defining the types of business activity that are to be prohibited as unlawful."   *Id.* at 38, *e.g. Jenkins v. Pech*, 301 F.R.D. 401, 408 (D.Neb. 2014) (finding the NCPA contemplates broad injunctive relief "to satisfy its public interest goals"); *Jenkins*, 538 F. Supp. 2d 1165 at 1176 (quoting *Arthur v. Microsoft* in finding the NCPA allows private citizens to bring civil suit "because 'the goal is to establish a uniform standard of conduct so that businesses will know what conduct is permitted and to protect the consumer from illegal conduct'").

### b. Discussion

The defendants direct the Courts attention to the plain language of Neb. Rev. Stat. § 59-1609.   Filing No. 208 at 10.   They argue the plaintiffs must establish actual injury and actual damages to be successful under NCPA claims.   *Id.*   Section 59-1609 reads:

> Any person who is injured in his or her business or property by a violation of sections 59-1602 to 59-1606, whether such injured person dealt directly or indirectly with the defendant, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of sections *59-1603 to 59-1606*, may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount which bears a reasonable relation to the actual damages which have been sustained and which damages are not susceptible of measurement by ordinary pecuniary standards; except that such increased award for violation of section 59-1602 shall not exceed one thousand dollars.

Neb. Rev. Stat. §59-1609.   The defendants assert that an NCPA claim requires plaintiff's to prove four elements: 1) Defendants engaged in an act or practice that constitutes an

unfair method of competition or a deceptive trade practice in the conduct of any trade or commerce; 2) Defendants' conduct affects the public interest; 3) Plaintiff was injured in her business or property by Defendants' unfair method of competition or deceptive trade practice; and 4) The nature and extent of plaintiff's damages. Filing No. 208 at 11 (*citing WWP, Inc. v. Wounded Warriors Fam. Support, Inc.*, 628 F.3d 1032, 1042 (8ᵗʰ Cir. 2011). In WWP, however, the Eighth Circuit did not analyze the elements of the NCPA but simply acknowledged the parties agreed to these four elements. *WWP*, 628 F.3d at 1042.

In the present case, defendants engaged in a practice that is unfair or deceptive by attempting to collect interest to which they were not entitled. Demanding payment of money to which they were not entitled is a statutory violation of 15 U.S.C. § 1692(e), is unfair, and necessarily misled consumers as to the amount owed. *See State ex Rel v. Consumer Choice Foods*, 755 N.W.2d at 591. These characteristics satisfy the Nebraska Supreme Court's understandings of unfair or deceptive practices under the NCPA. *Id.*

The defendants' conduct affected the public interest. This case is a certified class action with 3,662 members, and the defendants admitted that charging interest absent an underlying agreement was their standard business practice. *See Arthur*, 676 N.W.2d at 38 (finding a class action of 4,000 or more members and Microsoft's activity in Nebraska was sufficient to deem the question a matter of public interest). CBS and Tighe's acts are not limited to private transactions but have widespread effects on the people of Nebraska and implicate matters of public policy. *See Nelson*, 605 N.W.2d at 141-42.

The defendants argue the named plaintiff was not injured in her business or property as understood under the NCPA. Filing No. 208 at 10. However, the defendants confuse injury with damages. Neither the Nebraska Supreme Court nor Nebraska statute

defines what constitutes an "injury" under the NCPA.  In its most general legal sense, "injury" means an invasion of a legally protected interest.  Restatement 2d Torts §7.  The Supreme Court elaborates that a plaintiff must show that she has "suffered an injury in fact that is concrete, particularized, and actual or *imminent.*"  *TransUnion*, 141 S.Ct. at 2203 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  Further, the NCPA is remedial and should be broadly construed to effect [its] purpose.  *Arthur*, 676 N.W.2d at 37.  The NCPA endows Nebraska residents with the legally protected interest to not be subjected to deceptive or unfair trade practices.  Thus, submitting consumers to debt collection letters that attempt to collect unauthorized amounts of interest invades a legally protected right.  Additionally, the attempts to collect unauthorized interest under Nebraska law also posed an imminent risk of monetary harm to the Bassetts, which would have come to fruition had they paid more than they legally owed.  The defendants' acts of unfair and deceptive debt collection injured the Bassetts.

The defendants argue a successful NPCA suit requires actual damages.  Filing No.  208 at 10.  This assertion is without merit.  Section 59-1609 provides persons who are injured by deceptive trade practices the right to sue "to enjoin further violations, to recover the actual damages sustained, *or* both."  Neb. Rev. Stat. § 59-1609.  The plain, unambiguous language of the statute provides a right to bring a civil suit to enjoin unlawful behavior *or* recover actual damages.  *Id.*  The "or" necessitates the observation that actual damages are not required for a successful NCPA claim.

This Court holds that CBS and Tighe violated the NPCA by collecting interest on debts pursuant to Neb. Rev. Stat. § 45-104 without first obtaining a judgment entitling them to such interest.

24

Given the NCPA's equitable nature and its intended goal of protecting the people of Nebraska from unfair and deceptive trade practices by establishing a uniform standard of behavior, this Court hereby enjoins CBS and Tighe from attempting to collect interest on alleged debts, under § 45-104 without first obtaining a judgment.[5]

### CONCLUSION

The trial court is under an obligation to ensure the enforcement of controlling law. Fed. R. Civ. P. Rule 50 Notes of Advisory Committee on Rules – 1991 Amendment.  Since no rule requires a formal motion before a court can direct a verdict, this Court has determined the controlling law requires judgment as a matter of law.  *Peterson v. Peterson*, 400 F.2d at 343.   Neb. Rev. Stat. §45-104 provides for the collection of prejudgment interest on four types of judgments.  *Weyh*, 929 N.W.2d at 62.  Prejudgment interest is part of the judgment and cannot be collected absent a judgment.  *Valley Cnty. Sch. Dist. 880005*, 790 N.W.2d at 468.  Accordingly, as a matter of law, attempting to collect interest pursuant § 45-104 without first obtaining a judgment overstates the amount due and is a material violation of 15 U.S.C. § 1692(e).  *Coyne,* 895 F.3d at 1038. Additionally, the collection of interest to which a party is not entitled, constitutes an unfair and deceptive business practice under Neb. Rev. Stat. § 59-1602.

**THEREFORE, IT IS ORDERED THAT:**

1. The Court does not accept the verdict of the jury in favor of the defendants under

   15 U.S.C § 1692(e) (Claim I).

---

[5] This Court does not opine on the defendants' argument that the NCPA does not allow for statutory damages without actual damages as any possible damages would be duplicative of the damages awarded on the FDCPA claim.

2.  On its own motion, the Court finds plaintiffs are entitled to judgment as a matter of law on Claim I.

3.  The Court accepts the verdict of the jury in favor of the defendants under 15 U.S.C. § 1692(g) (Claim II).

4.  The Court finds in favor of the plaintiffs and against the defendants under Neb. Rev. Stat. § 59-1602 (Claim III).

5.  The Court finds the plaintiffs are prevailing parties in this action and are entitled to attorney fees.

6.  Plaintiff shall file a motion for attorney fees within 21 days of the date of this order and a bill of costs in accordance with the local rules.  Defendants have 14 days thereafter to respond.  Plaintiff has seven days thereafter to file a reply brief.

7.  A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 13th day of August 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge